J-S27031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARL SMITH A/K/A TETI AMUN RA-BEY | : | |
| | : | |
| | : | No. 1680 EDA 2022 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered May 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005823-2018

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 17, 2025**

Carl Smith, a/k/a Teti Amun Ra-Bey ("Appellant"), appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury found him guilty of aggravated assault and related offenses. Serving an aggregate sentence of eight to 16 years' incarceration, Appellant contends the trial court erroneously admitted into evidence a suggestive out-of-court photo identification of him, and he raises for the first time a jurisdictional claim asserting that the trial court lacked jurisdiction to subject him to trial on the charges he faced and to sentence him on his convictions. We affirm.

The trial court aptly sets forth the facts and procedural history relevant to the present appeal, as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant was arrested on May 5, 2018, on two counts of aggravated assault and one count each of possession of an instrument of crime, simple assault, and recklessly endangering another person. 18 Pa.C.S.A. §§ 2702, 907, 2701, and 2705. Appellant filed approximately 40 *pro se* letters and motions before and during trial while represented by counsel. [**See**] Defendant's Secure Docket at 9-12; 16; 18-22; 24;28-9, Numerous continuances were requested by the defense and granted. *Id.* at 10-1; 13; 15-6; 18; 20; 22; 26-7; 30. The [trial] court also continued the matter several times on its own initiative, including for the COVID-19 pandemic. *Id.* at 14, 23. Appellant did not file a motion before trial to dismiss the charges because of these delays.

On February 21, 2019, Appellant's counsel did file a motion to suppress an out-of-court identification. The defense, however, later withdrew this motion. Defense counsel explained to the motions judge that the identification was not caused by "a procedural error by the police in terms of a bad photo array, a bad show-up, a lack of a lineup, anything of that nature." N.T. (Motions Hearing), 4/30/21, at 6-7. Defense counsel further framed the issue as whether the "person in the picture is, in fact, the person at bar," and told the motions judge he would address this at trial on cross-examination. *Id.* at 7.

. . .

Trial ended with a guilty verdict on all counts on June 3, 2021. The second count of aggravated assault and the first count of simple assault merged with the first count of aggravated assault. Appellant was given no further penalty for the charge of recklessly endangering another person. Appellant was sentenced on May 24, 2022, to 8 to 16 years' incarceration for aggravated assault and a concurrent 2.5 to 5 years' incarceration for possession of an instrument of crime.

A notice of appeal was timely filed June 29, 2021. Judge Perez ordered defense counsel to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on July 5, 2022. Appellant's counsel filed the statement on July 25, 2022, citing two grounds. The first pertained to the out-of-court identification. Appellant asserted, "[t]he trial court erred in failing to suppress the out-of-court identification of the defendant by the complaining

witness, where police showed a single photo of the defendant to the complainant rather than a photo array or lineup." The second point for appeal involved the authentication of prison phone calls. Appellant asserted the trial court erred in allowing the prison phone calls to be heard by the jury.

Judge Perez filed an opinion [on] November 9, 2022, by which she recommended the Superior Court deny the second point for appeal because Appellant's identifying information and circumstantial evidence sufficiently authenticated the prison calls.[]

Appellant told his attorney [on October 21, 2022] he wished to represent himself . . . . Appellant's attorney filed a motion to withdraw on November 9, 2022. A **Grazier** [1] hearing was held in the Court of Common Pleas . . . at the Superior Court's direction on May 26, 2023. Appellant was questioned about his awareness of his rights and responsibilities and was permitted to proceed *pro se*.

Trial Court Opinion, 12/8/2023, at 1-4. This *pro se* appeal follows.

The argument section of Appellant's *pro se* brief develops only one issue raised in his court-ordered Rule 1925(b) statement, namely, that the trial court erred by permitting the Commonwealth to present at trial the complainant's out-of-court identification of him after investigating officers presented her with what he contends was an improperly suggestive, single photo of Appellant instead of presenting her with a photo array. **See** Brief of Appellant, at 4.

The notes of testimony, however, show defense counsel abandoned this claim at the suppression hearing after acknowledging that it was the complainant who presented the photograph of Appellant stored in her cell

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

phone to first-responder police officers and investigators at the time she accused him of assaulting her.

> **Defense counsel:** This is simply a civilian witness pulling something up on her phone and alleging that the person is my client. That's a matter of cross examination at trial, so we don't concede that ultimate issue. But for present purposes, there's no procedural irregularity by a state act, and so there's no motion in that regard for the court to decide.

N.T., 4/30/21, 6-7.

Nor did defense counsel object during trial when the complainant testified about her identification of Appellant aided by the photo during both the initial police response at her home and a subsequent interview in her hospital room. At trial, the complainant explained that she told first responders to her home that she knew Appellant but could not remember his name. N.T., 6/2/21, at 41. When it occurred to her that a picture of Appellant could be found on her friend's Facebook Messenger page, she suggested to police that they open her cell phone, helped them navigate to her friend's Facebook page, and identified Appellant from the photo to which she was referring. N.T., 6/2/21, at 41-42.

On cross-examination, the complainant testified that a police detective subsequently entered her hospital room where she was admitted as a patient and presented her with the same Facebook photograph of Appellant that she had given them through access to her cellphone. N.T. at 68. Upon inspection of the photograph, the complainant again identified Appellant as the man

- 4 -

depicted. N.T. at 72-73. Again, no defense objection was lodged regarding this identification.[2]

Generally, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Upon review of the record showing Appellant abandoned his counseled pretrial motion to suppress the photograph in question and then permitted the Commonwealth to introduce the photograph as part of the complainant's testimony identifying Appellant as her assailant, we determine he has forgone any basis upon which he could advance a direct appeal challenge based on the Commonwealth's use of the single photograph of Appellant.

The remainder of Appellant's brief contains a rambling and somewhat incoherent assertion of two related arguments challenging both the validity of the criminal laws with which he was charged and the jurisdiction of the court of common pleas to conduct a trial of Appellant. Specifically, he claims, "Since there is no valid or Constitutional laws charged against Appellant there are no Crimes that exist, , [sic] consequently there is no Subject Matter Jurisdiction by which I can be tried in The Philadelphia Court of Common Pleas." He continues that he is thus "inviolable to arrest or detention and shall enjoy immunity from the Criminal Jurisdiction of the Philadelphia Court of Common Pleas pursuant to the Vienna Convention on Diplomatic and Consular Relations

---

[2] The only objection lodged by the defense at trial was to the trial court's ruling permitting the Commonwealth to publish the single photograph of Appellant to the jury. N.T., 6/2/21, at 43. Notably, Appellant does not address this objection in his argument.

. . . as a Diplomatic Consular/Devine Minister Penipotentiary/Sheik of the Moorish National Republic Federal Government." Brief for Appellant at 2.

Initially, Appellant presents nothing but a bare assertion, supported by neither fact, legal argument, nor citation to legal authority, that the Commonwealth charged him with invalid, unconstitutional, and unenforceable laws, and so we deny him relief on this wholly undeveloped claim. As for his similarly unsubstantiated self-proclamation of diplomatic immunity from our criminal justice system, the trial court has authored an opinion that aptly dismisses this part of Appellant's brief as consisting of vague, meritless rhetoric having no basis in fact or law. In relevant part, the trial court observes:

> Appellant seeks a new trial on the grounds the Philadelphia Court of Common Pleas and the Philadelphia District Attorney (1) denied him the "right to proper status," (2) lacked jurisdiction, and (3) denied him the right to represent himself. [3] Appellant cites Article I, Section 9, of the Pennsylvania Constitution, The Moroccan-American Treaty of Peace and Friendship of 1786, also known as the Treaty of Marrakesh, and the Treaty of Fort Harmar (1789). He provides no argument beyond his caption of this [] ground for appeal.
>
> . . .
>
> [The trial] court does not understand what Appellant means by the "right to proper status." And his reference to Article I, Section 9, of the Pennsylvania Constitution, to the Moroccan-American Treaty of 1786, and to the Treaty of Fort Harmar give no clue. Article I, Section 9 addresses a variety of rights of the accused in criminal proceedings but nothing remotely pertaining to the "right to proper status." The Moroccan-American Treaty concerns

_____

[3] Appellant did not raise this third issue on appeal.

diplomatic and commercial relations between Morocco and the United States at the end of the 1700s. Finally, the Treaty of Fort Harmar secured favorable boundaries for the United States from six Indian Nations in the Northwest Territory in 1789. These treaties have nothing to do with the right of an accused in a criminal prosecution.

Appellant's claim that the Philadelphia Court of Common Pleas and the Philadelphia District Attorney lacked jurisdiction—while at least cloaked in legal terms—should also be waived for vagueness.

. . .

[Finally,] Appellant's claim that he is entitled to a new trial because he is property and not a person is without merit. Appellant appears to claim he is entitled to a new trial because he descends from slaves and remains property and is not a person subject to criminal laws. Appellant offers no explanation beyond the caption of his sixth argument and cites to no legal authority. The argument is vague and without legal basis. It should be denied.

Trial Court Opinion, 12/8/23, at 11-12.

We concur with the trial court's determination and dismiss as frivolous Appellant's claims of immunity from prosecution because of his Moorish-American identity. *See*, *e.g.*, *Allah El v. District Attorney for Bronx County*, No. 09 CV 8746(GBD), 2009 WL 3756331, at *1 (S.D.N.Y. 2009) (unpublished opinion) (person's "purported status as a Moorish-American citizen does not enable him to violate state ... laws without consequence"); *State v. Verge*, 316 Kan. 554, 518 P.3d 1240 (2022) (defendant was United States citizen and subject to Kansas jurisdiction for crime committed there even though he claimed to be "natural living soul, Indigenous Native Moorish-American National); *City of Shaker Heights v. El-Bey*, 2017 Ohio 929, 86 N.E. 3d (2017) (rejecting as "frivolous" a "Moorish American" defendant's

"sovereign citizen" argument denying local, state, and federal jurisdiction over him) (citing decisions); ***Caldwell v. Wood***, No. 3:07cv41, 2010 WL 5441670, at *17 (W.D.N.C. 2010) (unpublished opinion) (petitioner's allegation that membership in the Moorish-American Nation entitled him to ignore state laws was "ludicrous"); ***Bond v. N.C. Dept. of Corr.***, No. 3:14-CV-379-FDW, 2014 WL 5509057, at *1 (W.D.N.C. 2014) (unpublished opinion) ("courts have repeatedly rejected arguments ... by individuals who claim that they are not subject to the laws of the ... individual States by virtue of their 'Moorish American' citizenship").[4]

Judgment of sentence Affirmed.

Application for Relief Denied.

_____

[4] Appellant has filed an Application for Relief seeking the following:

> In the event of this Direct Appeal that I have not been given the proper discovery material evidence then I shall presume that there is no evidence to which no proof beyond a reasonable doubt to convict but was willful intent to impede or hinder, or obstruct or defeat the due course of justice with the purposeful intent to deny the equal protection of the law. . . . in violation of 42 U.S.C. 1983. I will file a Motion to Quash under Pa.R.A.P. 1922(a)(7) to vacate criminal conviction and Judgment of Sentence.

"Request for Constitutional Preservation of Birthrights Unalienable Creator Given Rights Natures Law and Allah Nature Equal Protection Component of Due Process," at 2. For the reasons expressed *supra*, we DENY Appellant's Application for Relief.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/17/2025